MilligaN, J.,
delivered the opinion of the court:
On the 31st of May, 1866, the claimant entered into a written contract with the United States, acting through Oapt. Joseph Tuttle, assistant quartermaster, United States Army, which, among other stipulations, contains the following:
*250 “ The said William H. Hardy shall transport from Hardy-ville, A. T., to Fort Whipple, A. T., and Camp Lincoln, A. T., the following amount, United States Government stores; from Hardyville to Fort Whipple, A. T., 486 tons, more or less; from Hardyville, A. T., to Camp Lincoln, A. T., 351 tons, more or less; said stores to be delivered at Hardyville in sufficient quantity to enable the said William II. Hardy to deliver the same to the above-mentioned posts within the time specified in this contract.”
The contract was to go into effect on the 1st day of July, 1SG6, and to be performed on or before the 31st.day of December following.
For the stores delivered at Fort Whipple he was to receive 8.} cents per pound; and for those delivered at Camp Lincoln 12| cents per pound, “ in United States'gold coin, or the market value thereof in United States currency on the day of pay
. During the time the contract was in force the defendants furnished only 10,453 pounds for transportation to Camp Lincoln, and 149,916 pounds to Fort Whipple, making an aggregate of 160,369 pounds, or about 78¿- tons, leaving 758¿ tons which were not offered for transportation.
The claimant has been paid for the 7SJ tons transported under the contract, and now prosecutes this suit to recover damages on an alleged breach of the contract by the defendants.
The proof establishes the fact that immediately after the contract was executed the claimant, at great expense, put himself in readiness to fulfill its stipulations within the time specified, and kept himself in readiness at all times during the life of the contract to perform his obligations under it.
The defendants were fully apprised of the claimant’s continued ability and readiness to perform, but failed to notify him that no other stores than those before mentioned would be sent forward for transportation. On the contrary, the senior quartermaster at San Francisco, Cal., through whom the supplies were to come, as late as the 29th of September, 1866, informed the claimant by letter that he fully appreciated his position, and regretted the delay in sending forward stores, but from information derived through the quartermaster at Yuma, he could but believe a large shipment of grain and other stores must have reached him before that time.
*251 But none arrived, nor was there any excuse or apology offered for their non-arrival; but the claimant was kept under an expense from day to day equal to the expense of performance, in constant expectation of being called by the defendants to meet the obligations of his contract, until it expired by its own limitation.
I. The first question presented for consideration, under the general facts here stated, which are more at length set out in the findings heretofore filed, is in respect to the validity and scope of the contract. The defendants insist that the quartermaster had no authority to contract for the transportation of the quantity of stores mentioned in the contract, and that the words “ more or less,” used in the first clause, limit the number of pounds to be hauled to the quantity actually needed by the Government at Fort Whipple and Camp Lincoln.
The courtis unable to concur iu this proposition. The contract was made by an officer of the United States authorized by law to negotiate such contracts, and in the discharge of his duty he conformed with remarkable accuracy to all the formalities of the statute. Nothing is wanting to make it a valid agreement and binding on both parties.
The quantity of stores to be delivered is specifically mentioned in the contract, with the ¡daces from and to which they were to be transported, and the whole approved by the district, department, and division commanders. If too much was required, the claimant is not responsible for the mistake. It was not his error, for he had no discretion in the matter, and cannot be held in any way accountable for it.
But it is claimed, as the contract obliges the claimant to transport 4S6 tons, “ more or less,” to Fort Whipple, and 351 tons, more or less,” to Gamp Lincoln, the defendants fulfilled their part of the agreement when they furnished 10,453 pounds for Gamp Lincoln, and 149,016 pounds for Fort Whipple.
The qualifying words 11 more or less,” used in the contract, rae words of intention, and must be understood in their plain, ordinary, and popular sense. They have by usage no technical meaning, aud must always be so understood as to effectuate the immediateintention of the contracting parties. This intention is obvious from, the contract itself, and needs no resort to extraneous evidence to show it.
The contract, as shown in the clause hereinbefore incorpo *252 rated, constitutes a dependent agreement, in which the obligation of tbe claimant to perform bis part of the engagement rests and depends wholly upon th e fulfillment of the defen dants’.promise. If the defendants had first delivered the stores in season to the claimant at Hardyville, he would have been bound to transport them to the points of destination named in the contract. But the performance of the obligation to deliver is a condition-precedent to the performance of the obligation to transport, and the non-performance of the former discharge d the claimant from all liability under the latter.
But the exact number of tons to be delivered and trans-porte d is qualified by the words “ more or less,” employed in the contract, and may be slightly varied by either party without infringing his obligatio n, or in any way defeating the actual intent and meaning of the contract. But the defendants had no more right to withhold one-half, one-third, fourth, or fifth of the number of tons mentioned, than the claimant had to refuse to transport the same quantities when offered.
To giv e the words u more or less,” or their equivalents, such an interpret ation 'would defeat every contract into which they may be inserted, and render ineffectual all attempts to provide against slight discrepancies which business or convenience may re quire.
If support is needed for the positions here assumed, it may be found in the following cases: Stebbins v. Eddy, (4 Mason’s. C. C. R., pp. 410, 418, and authorities cited;) Faure v. Martin, (3 Selden’ s N. Y. R., pp. 210, 215, 219;) Cross v. Eglin, (2 Barn. & Adol., p. 106;) Allen v. Cabot, (1 Allen’s Mass. R., p. 546, cited in 1 Parsons on Contracts, pp. 541, 542, note 3.)
Assuming tha t the contract is valid, and that its scope was liable to only a sligh t change by the qualified words 11 more or less,” it follows that the defendants were bound to furnish the whole number of tons m entioned in the contract at Hardy-ville in time for the claimant to deliver them at Fort Whipple and Camp Lincoln within the time specified in the contract, and their failure to do so constituted a breach, for which they are answerable in damages.
Doubtlessly, if the contract had been ■ carried out in good faith by both parti es, the number of tons specified might liavebeen slightly varied by either party without working a breach; but as the defendants only delivered 78J tons out of the whole *253 837 tons mentioned in the contract, they cannot, on account of their own default, claim an abatement in the damages under the words u more or less,” but must be held to the full measure of damages resulting from the breach of their expressed obligation. *
II. This brings us to the consideration of the rule by which the damag'es are to be measured. Few cases exactly similar to this in all their features have been found in the books, but the principle on which the damages' are to be estimated is abundantly recognized.
At the common law, the principle is to give a compensation which shall put the injured party in the same position in which he would have stood had he not been injured. And in modern times, says Parsons on Contracts, edition of 1806, volume 1, page 190, “ courts seek to apply to each case such rules as will carry out the universal principle, as far as may be, that the actual damages must measure the compensation given for it by law.”
The Supreme Court, following this principle in the case of the Philadelphia, Wilmington & Baltimore Railroad v. Howard, (13 How., p. 344,) after declaring that actual damages include the direct and actual loss sustained, conclude their •opinion by saying: “ We hold it to be a clear rule, that the gain or profit of which the contractor was'deprived by the refusal of the company to allow him to proceed with and complete the work w;as a proper subject of damages.”
Again, in Speed’s Case, (8 Wall., p. 77,) which went on appeal from this court, the Supreme Court, in laying down the rule of damages, say: “We do not believe that any safer rule, or one nearer to that supported by the general current of authorities, can be found than that adopted by the court, to wit, the difference- between the cost of doing the work and what claimants were to receive for it, making reasonable deduction for the less time engaged, and for release from, the care, trouble, risk,, and responsibility attending the full execution of the contract.”
However just and accurate this rule maybe in cases in which the contract has been put an end to, and the hope and expectation of full performance entirely cut off, it does not in all respects meet the facts of the case now under consideration.
In this case the defendants not only failed to perforin their part of the contract, but by their promises kept alive the hopes -and expectations of the claimant that they would comply with *254 their obligation and require the fulfillment of his. The result was that the claimant, during the whole period of the contract, ,was kept in a constant state of expectation, ready, willing, and able to meet his engagements.
The expense and liability thus necessarily imposed upon him, • as shown by the proof, were nearly or quite equal to that which would have followed full performance.
The readiness and ability of the claimant to perform, in this case, is equivalent to actual performance; and in such cases the measure of damages is prima faoie the. contract price; but circumstances may be shown which will mitigate the damages. Here no attempt has been made to excuse the default of the defendants or to mitigate the damages, and we can but give the rule its full effect. (Masterton v. Mayor of Brooklyn, 7 Hill, p. 75.)
Assessing the damages on the basis of the contract price, the account stands as follows :
Stores to be carried from Hardyville to Fort Whipple,
486 tons, or 972,000 pounds, at 8£ cents per pound.. $82,620 Stores to be carried from Hardyville to Gamp Lincoln,
351 tons, or 702,000 pounds, at 12-J¡ cents per pound. 89,505
Total.,.-.172,125
By amount received. 14,110
158,015
Judgment will therefore be entered in ftivor of the claimant for $158,015 in United States gold coin.